UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JUAN JOSE ALVARADO,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>    Defendant. | No. CV-07-3096-JPH<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 22, 24). Attorney D. James Tree represents Plaintiff; Assistant United States Attorney Frank A. Wilson and Special Assistant United States Attorney David R. Johnson represent Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 8.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 24). Plaintiff's Motion for Summary Judgment (Ct. Rec. 22) is **DENIED.**

**JURISDICTION**

On February 22, 2005, plaintiff Juan Alvarado (Plaintiff) protectively filed an application for supplemental security income (SSI). (Tr. 69-71.) Plaintiff alleged disability due to diabetes

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT-1

mellitus, cellulitis, neuropathy, back and left shoulder pain, vision problems, skin infections, and mental impairments, with an onset date of November 1, 2001. (Tr. 69, 81-82.) Benefits were denied initially and on reconsideration. (Tr. 40-42, 44-47.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Peter J. Baum on October 19, 2006. (Tr. 349-373.) At the hearing, Plaintiff, who was represented by counsel, testified, as did vocational expert (VE) Scott Witmer. The ALJ denied benefits and the Appeals Council denied review. (Tr. 4-7, 14-20.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here. Plaintiff was 39 years old at the time of the hearing. He completed the ninth grade. (Tr. 351.) Plaintiff has past relevant work as a garage mechanic and farm laborer. (Tr. 352.) He testified he was laid off on October 31, 2001, because after lunch he became dizzy or sleepy and could not keep up with his work as a mechanic. (*Id*.)

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a

Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423 (d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F. 3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.520, 416.920.  Step one determines if the person is engaged in substantial gainful activities.  If so, benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404. 1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past.  If a Plaintiff is able to perform previous work, that Plaintiff is

deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered. If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F. 2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F. 3d 1111, 1113 (9th Cir. 1999). The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that: (1) Plaintiff can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F. 2d 1496, 1498 (9th Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and supported by substantial evidence. *See Jones v. Heckler*, 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial

evidence." *Delgado v. Heckler*, 722 F. 2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F. 2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance.  *McAllister v. Sullivan,* 888 F. 2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F. 2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F. 2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

   It is the role of the trier of fact, not this court, to resolve conflicts in evidence.  *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner* v. *Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F. 2d 1226, 1229-

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT-5

1230 (9th Cir. 1987).

**ADMINISTRATIVE DECISION**

At the onset the ALJ noted plaintiff filed three claims previously: October 16, 1996, March 18, 2002, and November 5, 2002. (Tr. 14.)  The claim protectively filed on November 5, 2002, was initially denied on June 5, 2003, subject to possible reopening but denied because there was no new material evidence.  The ALJ opines that the March of 2002 and October of 1996 claims are too old to reopen as there is no evidence of fraud or error on the face of either denial.  Accordingly, the ALJ found that the current issue is disability since February 22, 2005, the protective filing date. (*Id.*)

At step one, the ALJ found plaintiff worked after his protective filing date of February 22, 2005, but "did not earn enough to qualify as substantial gainful activity." (Tr. 15.)  At steps two and three, ALJ Baum found plaintiff had impairments of diabetes mellitus with peripheral neuropathy, probable borderline intellectual functioning, and back pain, which are severe, but do not meet the requirements of any Listed impairments. (Tr. 18.)  He found that plaintiff has the RFC for a significant range of light work. (Tr. 17.)  With respect to mental impairments, plaintiff is limited to performing simple tasks.  (Tr. 19.)   At step four, relying on the VE's testimony, the ALJ found that plaintiff is unable to perform his past relevant work as a garage mechanic or farm laborer.  (Tr. 17.)  At step five, also relying on the VE, the ALJ found plaintiff can perform other work, including electrical assembly. (Tr. 18.) The ALJ found plaintiff was, therefore, not under a "disability" as defined by the Social Security Act.  (Tr.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT-6

18-20.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ erred in failing to develop the record, weighing the medical evidence, and meeting his burden at step five. (Ct. Rec. 23 at 11-12.) The Commissioner responds that the ALJ's decision is without error, with one exception: the ALJ erred at step one because plaintiff's income in the year of filing (2005), meets the definition of substantial gainful activity. (Ct. Rec. 25 at 5; fn 1.) The Commissioner argues that if the Court does not affirm the ALJ's decision, the Court should affirm based on a modified step one finding. Plaintiff's reply brief does not address the Commissioner's argument. (Ct. Rec. 26.)  In the interests of judicial economy, the Court addresses plaintiff's arguments first.

**DISCUSSION**

**A. Weighing the medical evidence**

Plaintiff alleges that the ALJ failed to properly weigh the opinion of treating physician Mark Sauerwein, M.D., on April 21, 2004, that plaintiff "is not able to be productive in any kind of job situation at this point because his diabetes is in such poor control." (Ct. Rec. 23 at 15-16 and 26 at 4-5, referring to Tr. 281). The Commissioner responds that the ALJ appropriately considered Dr. Sauerwein's medical opinions but was not required to credit his vocational opinion. (Ct. Rec. 25 at 10-12.)

A treating physician's opinion is given special weight because of familiarity with the claimant and the claimant's physical

condition. *Fair v. Bowen*, 885 F. 2d 597, 604-05 (9th Cir. 1989). Thus, more weight is given to a treating physician than an examining physician. *Lester v. Cater*, 81 F.3d 821, 830 (9th Cir. 1996). Correspondingly, more weight is given to the opinions of treating and examining physicians than to nonexamining physicians. *Benecke v. Barnhart*, 379 F. 3d 587, 592 (9th Cir. 2004). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F. 3d at 830. If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F. 3d 1435, 1463 99th Cir. 1995).

In addition to the testimony of a nonexamining medical advisor, the ALJ must have other evidence to support a decision to reject the opinion of a treating physician, such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 751-52 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1042-43 (9th Cir. 1995).

The ALJ notes that in an earlier opinion [on July 8, 2002], Dr. Sauerwein diagnosed mild degenerative disc disease of the thoracolumbar spine, and suggested plaintiff avoid jobs with repetitive stooping and bending but opined that plaintiff "does not meet the criteria for substantial disability." (Tr. 16, referring to Tr. 320.)

The ALJ considered the opinion of examining physician Saleem Khamisani, M.D., when he weighed Dr. Sauerwein's opinions. On May 19, 2003, Dr. Khamisani notes plaintiff was diagnosed with diabetes

four years earlier. His blood sugars and diet were poorly controlled but plaintiff complied with taking the medications prescribed for diabetes. (Tr. 245.) Plaintiff took no additional medication except an anti-inflammatory. (Id.) Dr. Khamisani diagnosed poorly controlled diabetes mellitus with moderate peripheral neuropathy and recurrent superficial skin infections, chronic AC separation at the left shoulder with restricted range of motion, and chronic low back pain, probably secondary to degenerative arthritis, with no evidence of radiculopathy. (Tr. 248.) The ALJ notes that Dr. Khamisani opined plaintiff should avoid: (1) working in a dark environment; close proximity to heavy machinery; and extremes of temperature due to diabetic peripheral neuropathy; (2) using the left arm at or above shoulder height or lifting more than ten to 15 pounds with the left arm due to chronic acromioclavicular separation of the left shoulder area; (3) repetitive bending, twisting, stooping and squatting due to the possibility of degenerative arthritis of the lumbar spine; and (4) unprotected heights due to diabetic neuropathy. (Tr. 16, referring to Tr. 248.) The ALJ observes that these limitations are not more restrictive than those assessed by Dr. Sauerwein in 2002. (Tr. 16.)

When weighing the medical evidence, the ALJ considered plaintiff's credibility, and found him less than completely credible. (Tr. 16-17). Credibility determinations bear on the evaluation of medical evidence when an ALJ is presented with conflicting medical opinions. *Webb v. Barnhart*, 433 F. 3d 683, 688 (9th Cir. 2005).

ALJ Baum found plaintiff less than fully credible because his daily activities are inconsistent with allegations of total

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT-9

disability, and his subjective complaints are inconsistent with the medical treatment he receives. (Tr. 17.) The ALJ points to plaintiff's statements that he has no problems with personal care, does some household chores, goes out every day, drives, shops about three times a week, handles money, watches television, barbeques with family, regularly walks, and attends church; however, he does not deal well with stress. (Tr. 16, citing Exhibit E.) The ALJ opines that plaintiff's broad range of daily activity is inconsistent with a finding of total disability. (*Id*.) It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F. 2d 597, 603 (9th Cir. 1989).

The ALJ found plaintiff's medical treatment inconsistent with his subjective complaints. Plaintiff alleged that he is in constant pain but treats his pain "with only ibuprofen and has not sought more aggressive pain treatment." (Tr. 17.) This is a permissible reason to discount credibility. *See Para v. Astrue*, 481 F. 3d 742, 750-51 (9th Cir. 2007)(evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment); *see also Meanel v. Apfel*, 172 F. 3d 1111, 1114 (9th Cir. 1999)(rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received").

The ALJ properly weighed the medical evidence, including the contradictory opinions of Drs. Sauerwein and Khamisani, as well as those of the reviewing agency physicians. He considered plaintiff's credibility when he weighed the medical evidence, and gave clear and

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT-10

convincing reasons supported by the record for his credibility assessment. The ALJ's assessment of the medical evidence is supported by the evidence and free of legal error.

**B.   Duty to Develop the Record**

Plaintiff alleges the ALJ failed to develop the record with respect to his psychological impairments, specifically, by failing to order IQ testing after Dr. Toews assessed probable borderline intellectual functioning. (Ct. Rec. 23 at 14-15.) Plaintiff contends that such testing may reveal that he meets the requirements of Listing 12.05. (Ct. Rec. 23 at 14.) The Commissioner responds that the ALJ was not required to order IQ testing because a diagnosis of mental retardation is required to meet or equal this Listing, regardless of IQ scores, and plaintiff has never been diagnosed with mental retardation. (Ct. Rec. 25 at 6-9.)

In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983). An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan v. Halter*, 242 F.3d at 1150.

The ALJ notes that plaintiff was evaluated for mental impairments by an examining mental health professional. (Tr. 16.) On September 9, 2005, Jay Toews, Ed. D., interviewed plaintiff and performed a mental status exam. No records were available for review. (Tr. 259.) Dr. Toews notes plaintiff was not receiving

mental health care. Plaintiff was laid off as a mechanic in 2002 because business was slow. He did not believe that he had current psychiatric problems, and had no history of either psychiatric problems or treatment. Plaintiff described being "fairly active physically." (Tr. 259-260.) Dr. Toews observes: it "appears he is engaging in some physical activity," due to dirt and embedded grease on both hands. (Tr. 261.) Plaintiff attends church, and likes to fix and refinish things. (Tr. 260.) His mood was mildly dysphoric. Dr. Toews opined that there are no psychological barriers to employability. He diagnosed a mood disorder NOS, related to medical problems, probable borderline intellectual functioning, physical impairments by history, and assessed a GAF of 62.[1] (Tr. 261-262.)

On October 5, 2005, agency psychologist Mary Gentile, Ph. D., conducted a record review. (Tr. 209-222.) The ALJ observes that she assessed mild or no restrictions caused by mental impairments. (Tr. 16, referring to Tr. 219.)

The record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence.

Listing 12.05 concerns mental retardation, described as significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the

---

[1] A Global Assessment of Functioning (GAF) of 62 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th Ed., (DSM-IV), at 32.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT-12

developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.  20 C.F.R. § 404, Subpt. P, App. 1.

At step three, the ALJ found plaintiff's medically determinable impairments do not meet or medically equal one of the Listed impairments.  (Tr. 15, 18.)

It is the claimant's responsibility to prove disability at step three of the sequential evaluation.  20 C.F.R. §§ 404.1520 (a)(4)(iii), 404. 1520 (d).  The claimant bears the burden of establishing his impairments satisfy the requirements of a Listings impairment.  Tackett v. Apfel, 180 F. 3d 1094, 1098-1099 (9th Cir. 1999).  The Court finds that the second prong of the two-pronged test for Listing 12.05C is not met.  Listing 12.05, subsection C provides that the required level of severity for this disorder exists when (1) the individual has a valid verbal, performance, or full scale IQ of 60 through 70, and (2) the individual has a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Plaintiff fails to present adequate evidence that the limitations he suffers impose additional significant work related limitations of function.  The second prong of the Listing is not met.

As noted, Dr. Toews assessed probable borderline intellectual functioning, but opined plaintiff has no psychological barriers to employment.  No agency reviewing physician has opined that plaintiff has greater than mild mental impairments.  The findings of the medical professionals are consistent with the ALJ's findings that plaintiff's probable borderline intellectual functioning and

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT-13

residual functional capacity limit him to work requiring the performance of simple tasks. (Tr. 19.) The record does not describe a person with significantly sub-average general intellectual functioning with deficits in adaptive functioning: plaintiff's last job as a mechanic is listed with an SVP of 7, meaning it was skilled work. (Tr. 366.) A review of the record reveals that plaintiff's condition does not medically meet or equal the criteria for Listing 12.05. The ALJ's step three finding is without error, and because the evidence was clear rather than ambiguous, he was not required to supplement the record.

**C. RFC assessment and step five hypothetical**

Plaintiff contends ALJ Baum erred in his RFC assessment and at step five by failing to include all of plaintiff's medically established impairments. (Ct. Rec. 23 at 16-16.) This is essentially the same as plaintiff's first argument, that the ALJ improperly weighed the medical evidence. For the reasons previously articulated, the ALJ properly weighed the medical evidence.

Plaintiff argues that the ALJ found the only job he could perform was a semi-skilled job and the ALJ failed to identify any transferable skills to that job. (Ct. Rec. 26 at 5.) Plaintiff is incorrect. The ALJ specifically found that plaintiff either has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case. (Tr. 17, 19.) The VE testified that the job of electrical assembler (SVP 3, semi-skilled) does not require any skills plaintiff would not have already acquired as a mechanic (SVP 7, skilled). (Tr. 370.)

**D. Alternative step one finding - substantial gainful activity**

The Commissioner argues that the ALJ erred at step one by

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT-14

finding plaintiff had not engaged in substantial gainful activity during the relevant time. The Commissioner asks the Court to modify the ALJ's decision by changing the step one finding if the Court otherwise reverses the ALJ's decision. Plaintiff does not address this argument. The Court declines the Commissioner's request because the ALJ's decision is otherwise without error.

Finding the ALJ's decision supported by the evidence and free of legal error, the Court declines review of the ALJ's step one analysis since any error is clearly harmless.[2]

**CONCLUSION**

The ALJ properly assessed credibility and weighed the medical evidence. These determinations are supported by substantial evidence and free of legal error.

Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(Ct. Rec. 24)** is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 22)** is

---

[2]At the hearing the ALJ asked plaintiff's counsel:

"Do you contend that he was not performing substantial gainful activity up until 2005 because the wages certainly wouldn't reflect that?" (Tr. 367.) The ALJ pointed out that plaintiff's wages in 2005 were $36,000, $20,000 in 2004, and $37,000 in 2001. (*Id*.) Plaintiff's counsel acknowledged that it "looks like they were at SGA levels," but added that he did not know how long the jobs had lasted. Counsel indicated he wished to "just stick with what we've got for now." (*Id*.)

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT-15

**DENIED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED August 7th, 2008.

                                          S/ JAMES P. HUTTON
                                          JAMES P. HUTTON
                                UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT-16